STEVENS TANK AND TOWER COMPANY

*vs.*

BERLIN MILLS COMPANY.

Androscoggin.    Opinion November 18, 1914.

*Assumpsit.   Contract.   Delivery.   Merchantable.   Rescission.*

In an action of assumpsit to recover the price of a hard pine tank sold and delivered to the defendant.

*Held:*

1.   That the real issue is, whether the goods sold were of the kind, quality and dimensions called for by the contract.

2.   That this was a question of fact under proper instructions from the Court on which the jury found in favor of the plaintiff, and the record fails to convince us that the finding is so manifestly wrong that it must be set aside.

3.   That the defendant's attempted rescission by writing the plaintiff that the tank was in defendant's yard at Berlin subject to the plaintiff's shipping instructions does not meet the requirements of law.

4.   That the seller must be put in substantially the same position that he occupied before the contract; and the notification of a vendor by the vendee, that the latter holds the goods subject to the order of the former is insufficient.

5.   That the agreement on the part of the plaintiff to furnish a man to set up the tank was a subsequent and independent contract and not a condition precedent to the maintenance of an action for the price.

6.   A witness who was neither the agent nor representative of the plaintiff and who has testified that he did not recollect making a statement regarding workmanship, may be contradicted by showing that he did make such a statement, but the statement itself is properly excluded as he had no power to bind the company.

On motion and exceptions by the defendant.   Motion and exceptions overruled.

An action of assumpsit to recover the price of a hard pine tank claimed to have been sold and delivered to the defendant.   The real question is whether the goods sold were of the kind, quality and dimensions called for by the contract.   The jury returned a verdict for the plaintiff.

The case is stated in the opinion.

*George C. Wing*, for plaintiff.

*Sullivan & Daley, and White & Carter*, for defendant.

SITTING:  SAVAGE, C. J., CORNISH, HALEY, HANSON, PHILBROOK, JJ.

CORNISH, J.   Assumpsit on an account annexed to recover the price of a hard pine tank sold and delivered to the defendant.   The record shows these facts.

On April 14, 1913, the plaintiff, a manufacturer of tanks at Auburn, received a letter from the defendant, asking a quotation of the lowest price and best delivery at Berlin, N. H., where the defendant had a pulp mill, for "one prime long leaf hard pine tank, with two heads 25 feet x 17 feet O. D., 24 feet x 15 feet I. D., staves and bottom 6 inches, top 4 inches, 20 round hoops $1\frac{1}{8}$ inches.   The plaintiff, not clearly understanding the description, wrote for further information, in answer to which the defendant replied on April 16, enclosing a sketch of the desired tank with specification of dimensions.   The plaintiff under date of April 17, 1913, offered to sell the defendant a tank of the required material and dimensions for "$1100. delivered at Berlin, 2% 10 days, net 30 days," shipment to be made in about ten days after receiving the order.   This offer was accepted by the defendant, their letter of April 21, confirming the trade for "$1100 f. o. b. Berlin."   It was subsequently arranged by telephone that the plaintiff should send a man to Berlin to set up the tank, charging only for his cash disbursements.   A part of the material was shipped from Auburn on May 7th, and the balance May 9th.   On May 14th the defendant wrote the plaintiff stating that the tank had arrived and asking that a man be sent by the 20th to erect it.   This man,— Mr. Hutchins,—arrived at Berlin on the 20th and began the work, which required two weeks time, the men under him being employees of the defendant.   After the work was completed the tank was

tested and found to leak in several places. Mr. Hutchins made some changes and returned to Auburn. After interviews and correspondence between the parties, Hutchins returned to Berlin to make further changes and to remedy the leaks, but, as he says, was forbidden to touch the tank by representatives of the defendant. This testimony is controverted in a measure.

Much of the testimony had reference to the manner in which the tank was erected, but is beside the real issue because the agreement on the part of the plaintiff to furnish a man to set up the tank was a subsequent and independent contract and not a condition precedent to the maintenance of an action for the price. *Lombard Co.* v. *Paper Co.,* 101 Maine, 114.

The real issue is whether the goods sold,—the knock down tank— to borrow an expression from the furniture trade, were of the kind, quality and dimensions, called for by the contract.

The measure of the defendant's rights in this respect was stated to the jury in the charge as follows: "When a party orders of a manufacturer or dealer in a certain class of goods a certain article by description, then the party so ordering, having no opportunity for inspection, is entitled to receive the article ordered, and moreover a saleable and mechantable article under that name or description. . . . . And 'saleable or merchantable' does not only mean that it may or should be sold in the market, but it also means as defined by this Court, 'that it shall be of ordinary quality marketable quality, bringing the average price, at least of medium quality or good class, good lawful merchandise of suitable quality, good and sufficient of its kind, free from any remarkable defects.' " The defendant claimed that this test was not met, as shown by the condition of the tank when completed, while the plaintiff contended that the parts were properly prepared and would have produced a proper tank when completed, had not the defendant, against the plaintiff's protest, inserted a timber ten inches square across the tank a short distance below the top, cutting gains on the inner sides, on which the ends rested. This formed no part of the original plan of construction, but was added under the express orders of the defendant during the erection.

The plaintiff further claimed that the materials were not properly cared for and protected by the defendant after their arrival at Berlin, but were permitted to remain exposed to the weather for several days

in open cars, and that after the erection it offered to remedy the defects even to the extent of taking down the tank and reconstructing it, but that the defendant refused to give it the opportunity.

All these contentions were submitted to the jury, and the record fails to convince us that the finding of the jury is so manifestly wrong that it must be set aside.

If there was a breach of warranty in the quality, the defendant had a right to rescind the contract and return the goods within a reasonable time. The defendant's attempted rescission is expressed in the letter of July 1, in these words: "We have taken it down and it is in our yard at Berlin, subject to your shipping instructions." That does not meet the requirements of the law. The seller must be put in substantially the same position that he occupied before the contract. The buyer must return or tender back the goods to the seller at the place of delivery, unless upon making the offer so to do, he is relieved of the obligation by a refusal to receive them if tendered. It is not sufficient for a vendee who has taken delivery of the goods to make a proposal to return them or to notify the vendor that he holds them subject to his order. *Tyler* v. *Augusta,* 89 Maine, 180.

A single point is raised by the exceptions, namely, the exclusion of the alleged declarations of Hutchins in regard to the workmanship entering into the tank at the factory. Hutchins was in no sense the agent or representative of the plaintiff. He had no power to bind it by any statements that he might make. He was a workman sent by the company to take charge of erecting the tank, and nothing more. On cross examination he was asked:

Q. "When this tank was being erected did you talk with any of the men about there about the workmanship of the tank?

A. About what?

Q. About the workmanship that went into the tank?

A. I don't remember as I did.

Q. You don't remember whether you did or not?

A. No, sir.

Q. And you wouldn't say whether you did or not?

A. No, sir."

The defendant asked its superintendent, Brawn, whether Mr. Hutchins said anything to him during the erection of the tank as to the workmanship that went into it. Counsel in offering the testimony stated that it was for the purpose of contradicting Mr. Hutchins.

The witness was allowed to state whether or not Hutchins did say anything respecting the workmanship but was not permitted to state what he said. The ruling was correct. The testimony admitted. was admissible, so far as it went, to contradict Mr. Hutchins. The statement excluded was inadmissible, because as the presiding Justice remarked, it had not been shown that Hutchins was vested with power to fully represent the plaintiff. The distinction made was manifestly correct.

*Motion and exceptions overruled.*